DAVID WEISS, Wyoming Bar No. 7-5021
Asst. Federal Public Defender
5353 Yellowstone Road Ste. 207
Cheyenne WY 82009
Phone: 307-772-2781
Facsimile: 307-772-2788
david.weiss@fd.org

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL SCOTT HOPPER,<br><br>Defendant. | Case No. 26-CR-28-ABJ |

## DEFENDANT'S MOTION TO RECONSIDER THE COURT'S ORDER DISMISSING INDICTMENT WITHOUT PREJUDICE [ECF No. 43]

Michael Scott Hopper respectfully moves this Court to reconsider its May 15, 2026, Order Dismissing Indictment Without Prejudice. While the Court correctly determined that the United States Attorney engaged in flagrant misconduct that significantly infringed upon the grand jury's independence and warranted dismissal, the Court issued its Order before the defense could file its Reply.[1]

Consequently, the Court's Order did not address the government's institutional suppression of this misconduct, nor did it address the necessary secondary sanctions required if the government is permitted to re-present this case.

---

[1] This brief was prepared as a Reply that was about to be filed within seven days of the Government's Response to the Motion to Dismiss when the Court's Dismissal Order was docketed.

Reconsideration is necessary to prevent the government from utilizing a "clean slate" to quietly launder a systemic, institutional failure.

I.    The Government's Suppression of the Misconduct Warrants Dismissal *With Prejudice.*

The Court's Order concludes that while the prejudice to the Defendants is great, the dismissal is not prejudicial to the government because "[i]t may now take the case to new grand jury and start with a clean slate." This conclusion inadvertently rewards the United States Attorney's Office for an institutional cover-up. To avoid this result, dismissal *with prejudice* is required.

While dismissal without prejudice is ordinarily the appropriate remedy for prejudicial prosecutorial misconduct during grand jury proceedings, this Court retains the inherent supervisory power to dismiss an indictment *with prejudice* when prosecutorial misconduct is flagrant, widespread, or continuous. *See United States v. Acquest Dev., LLC.*, 932 F.Supp.2d 453, 462 (W.D.N.Y. 2013) (citing *United States v. Lawson*, 502 F.Supp. 158, 172 (D.Md. 1980); *United States v. Slough*,  679 F. Supp. 2d 55, 61-62 (D.D.C. 2010).   That drastic remedy is required here because the misconduct was not an isolated lapse in judgment by a single attorney; it metastasized into systemic, institutional failure by the United States Attorney's Office.

The government's own filing reveals that the misconduct was known to multiple attorneys and deliberately withheld. The government admits that an Assistant United States Attorney witnessed Smith explicitly tell the grand jury that he was handing them "slam dunks." This highly prejudicial, exculpatory information

was known to the government in March. Yet, when the government provided Mr. Hopper with his grand jury transcript on May 11, 2026, it remained silent. Compounding this institutional failure, Witness 1 indicated that at least one other Assistant United States Attorney was in the room during Smith's initial remarks to the potential panel, yet that attorney similarly failed to report the misconduct.

The United States Attorney's Office suppressed its chief executive's constitutional violations for nearly two months. The government only saw fit to disclose this "slam dunk" comment on May 8, 2026, and only after the defense independently uncovered Smith's initial misconduct and filed the instant motion to dismiss on April 24, 2026. The taint in this case is therefore widespread and continuous. It encompasses both U.S. Attorney Smith's original subversion of the grand jury's independence and the subsequent failure of the government's attorneys to timely disclose that subversion to defense counsel and to this Court. Allowing the government to quietly "cure" this pervasive, top-down misconduct by simply re-presenting the case offers zero deterrence to future constitutional violations. To preserve the integrity of the grand jury process and deter future bad faith, the indictment must be dismissed with prejudice.

## II.    In the Alternative, the Court Should Disqualify the United States Attorney's Office and Impose Disciplinary Sanctions Against Darin Smith.

If this Court declines to dismiss the indictment with prejudice and permits the government to re-present Mr. Hopper's case to a new grand jury, the Court must invoke its supervisory powers to impose secondary remedies to protect the integrity of the proceedings.

3

## A. Disqualification of the District of Wyoming U.S. Attorney's Office

The prosecution of this matter must be transferred to the Department of Justice in Washington, D.C., or to a different United States Attorney's Office. The disqualification of an entire office is a drastic measure, but it is required here due to an unresolvable conflict of interest. *United States v. Bolden*, 353 F.3d 870, 875 (10th Cir. 2003). While the customary remedy for a conflict of interest is to recuse the individual attorney, that measure is wholly inadequate when the conflicted individual is the head of the entire prosecuting office.

The misconduct was perpetrated by the chief executive of the district, U.S. Attorney Smith. Furthermore, the taint has infected the entire office. The government's response admits that another attorney witnessed the prejudicial "slam dunk" comment, yet the office suppressed this material information for nearly two months, revealing it only after the defense uncovered the initial misconduct.

The delayed disclosure of this misconduct highlights an inherent, structural conflict of interest: subordinate attorneys cannot reasonably be expected to impartially police the constitutional violations of their own chief executive, rendering the local office structurally ill-equipped to conduct a fair presentation before a new grand jury. Consequently, the District of Wyoming USAO is now simultaneously trying to prosecute Mr. Hopper while actively minimizing and managing the fallout of its own leadership's ethical failures. To protect the integrity of the grand jury process and restore public confidence in these proceedings, the District of Wyoming must be disqualified from any further involvement in this matter.

4

**B. The Court Should Impose the Disciplinary Remedies Acknowledged by the Government.**

In its response, the government suggests that instead of dismissing the indictment, the Court should rely on "[a]lternative avenues… to hold prosecutors accountable," explicitly citing *United States v. Hasting*, 461 U.S. 499, 506 n.5 (1983). If the Court does not dismiss the indictment with prejudice, Mr. Hopper agrees with these additional alternative remedies.

In *Hasting*, the Supreme Court outlined the specific tools a court should use to discipline prosecutorial misconduct, including: directing the prosecutor to show cause why he should not be disciplined, asking the Department of Justice to initiate a disciplinary proceeding against him, and publicly chastising the prosecutor by identifying him in the court's opinion.

If this Court declines to dismiss the indictment with prejudice, it must invoke these specific supervisory powers against U. S. Attorney Smith. The Supreme Court has long held that a United States Attorney's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). By explicitly instructing the grand jury pool that the targets were "murderers," that they were "bad people," and that he was handing the panel "slam dunks," U.S. Attorney Smith abandoned his ethical obligations and weaponized his authority to bypass the grand jury's independence.

The government has conceded that alternative avenues exist to hold U.S. Attorney Smith accountable. Therefore, in the alternative to dismissal, Mr. Hopper requests that the Court apply the very remedies the government cited in *Hasting* by:

(2) directing U.S Attorney Smith to show cause why he should not be formally disciplined by this Court; and (2) formally referring this matter to the Department of Justice for the initiation of disciplinary proceedings.

## CONCLUSION

**WHEREFORE**, the Defendant respectfully requests that this Court reconsider its Order and dismiss the indictment with prejudice. In the alternative, should the Court permit re-indictment, the Defendant requests the disqualification of the United States Attorney's Office for the District of Wyoming, alongside a show cause order and disciplinary referral of United States Attorney Darin Smith.

DATED this 15th day of May 2026.

Respectfully submitted,

TRACY R. HUCKE
Federal Public Defender

/s/ *David Weiss*

DAVID WEISS
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on May 15, 2026, to counsel of record via ECF.

/s/ *David Weiss*
DAVID WEISS